Santiago, 183776, and United States v. Santana is on submission, 19182. Thank you. Good morning. Good morning, Your Honors. May it please the Court, Counsel, my name is Karloff Cummings-Young, and I represent David Santiago in this appeal. Your Honors, first let me begin by saying that given the holding of United States v. Brown, which came out in guidelines crime of violence, if the predicate is a crime of violence, I would focus my argument this morning to whether the predicate Hobbs Act robbery in the racketeering conspiracy that Mr. Santiago was convicted of is a crime of violence, and I would argue that the Hobbs Act robbery is not a crime. Would you focus on the appeal waiver? I can focus on the appeal waiver, but I might focus on the appeal waiver. Okay, I will start with the appeal waiver, Your Honors, and I would say this about the appeal waiver, and I know that appeal waivers are typically ironclad, but I would say that in this particular instance, how an individual is sentenced, whether an individual is sentenced correctly goes to the fundamental fairness of our system, and the plea agreement itself contemplates that if a guidelines range is incorrectly calculated, if we receive some new information that might change or adjust the guidelines range, if the defendant is not deemed to be a career offender, and there's new information that comes to the parties that deem the defendant to be a career offender, the parties agree in the plea agreement that the guidelines range would be changed, so I think we have, it seems, in VIGI and other cases, specifically foreclosed that, so if there is some decision that follows a plea of guilty with an appeal waiver, that's not a basis by itself to get out from under the appeal waiver. So, take me through why this is the special, unique unicorn of cases where that rule doesn't apply. I would simply focus it on the seriousness of the, of a defendant's standing at sentencing as a career offender. Career offender, we haven't, I think, carved out an exception for career offenders when we announced that rule in VIGI and a line of other cases, so explain that to me. And I understand that the court has not made that particular carve out, but I guess I would be asking that the court make that particular carve out in this particular case. What would be the theory? Because the sentencing enhancement with respect to a defendant's status as a career offender is so significant, is so serious in many instances, and I say that with the understanding that Mr. Santiago's actual sentence did not reflect a sentence within the... His waiver actually says that the waiver is binding on the parties even if the court employs a guidelines analysis different from that stipulated to herein, right? Not all waivers have to do that. He could have said, I only agree not to appeal as long as it follows this guidelines analysis. Couldn't he have? I would say that it's my experience that most plea agreements, or at least most plea agreements that I've seen... Most plea agreements in the Southern District of New York? Yes, mostly. Not every one. Yes, that's correct, Your Honors. I would simply argue that in this case when we're talking about a defendant's status as a career offender that the enhancement is so serious, is so significant to a defendant that I think that a carve out should be made in this instance with respect to... Well, he got the... In one sense he got a benefit because the sentence imposed was 120 months, substantially lower as I understand it, right? It was substantially lower than the range set out in the plea agreement. Yes, it was. In fact, Your Honor, it ended up being 120 months because he had 60 months left on a sentence from another case. Right, okay. And yes, I would agree with that, Your Honor. And I guess a lot of this may be academic, Your Honor, but I still think that it's serious. It's significant enough that I think that a carve out is required in this particular case. Appreciate it. Okay, thank you very much, Mr. Metzner. May it please the Court, Carl Metzner on behalf of the United States. Mr. Santiago's appeal waiver bars this appeal. He was sentenced to 60 months on this case with an appeal waiver that barred any appeal of 240 months or less. In exchange for that appeal waiver, Mr. Santiago had two counts. One, a narcotics count with a 10-year mandatory minimum. One, a firearms brandishing count with a 7-year mandatory minimum consecutive sentence dismissed against him in exchange for his plea. So it was 60 months plus... I thought it was 120. It was 60 months run consecutively to another case, Your Honor, and that's why it ended up being 120 as a net effect. The judge was taking that into account for the pharmacy burglaries case that this defendant was already involved in. But the evidence is clear that that waiver of appeal was knowing and voluntary. Judge Caproni allocated the defendant very carefully twice during this plea agreement proceeding, sorry, the plea allocation proceeding, to ensure that he was aware of the waiver of his appeal rights and specifically came back to it on a second occasion on the issue of whether a concurrent or consecutive sentence would nevertheless still waive his appellate rights. Mr. Santiago was advised that even if his sentence was consecutive to that other case, he was still waiving his appellate rights, and he agreed that he understood that and wanted to go for it. Is there a note? Just take me through one question that I had, which is that in the plea agreement, which I take it is just the standard plea agreement in the Southern District of New York from 2018, April 2018, it allows parties to seek an appropriately adjusted guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above. And I take it that your friend, who was just in front of us, points to that section of the plea agreement to say that permits his client to bring up new information. Your Honor, that provision allows for the parties on either side, if they learn of criminal history that was unaware, the government often finds out, for example, that a defendant has a youthful offender conviction that was sealed, and the government is unaware of that conviction, and it comes out when the probation officer prepares the pre-sentence report, then either party under that provision is entitled to advise the court and say, despite the stipulations that we've agreed to in this agreement, we can argue for a different number because we have learned subsequent to the entry of the plea that the guidelines should be different for this objective fact of a criminal history that we were unaware of. That's the most reasonable reading of that language in my view, but I guess what the argument is is that another reading of that is somewhat contrary to the appeal waiver provision, but it also allows for new information in the form of a new decision, of a decision by this court of speech. Well, Your Honor, that would be squarely inconsistent with the express language of the appeal waiver itself. The appeal waiver is intended to take into account any way that the judge gets to a sentence at or below the stipulated range. It covers the waterfront of guidelines calculations. It covers the waterfront of any arguments that might be made. What the defendant is knowingly giving up is any appeal of his sentence that is at or below the top end of that range. What specific language do you think achieves that result? Your Honor, it's the appeal waiver itself which provides that, this is on page A-105 of the appendix, that the provision is binding on the parties even if the court employs a guidelines analysis different from that stipulated to herein, and that any appeal of a sentence that's not foreclosed by this provision will be limited to the portion of that calculation that is inconsistent with this stipulation. It applies whether the term is to run consecutively or concurrent, and it is intended to cover anything that relates to the imposition of the sentence. The point is that the defendant is getting the benefit of their bargain, which is if I get a sentence at or below this, then that's what I ask for, and the government is supposed to be getting the benefit of the resolution of the case and no further litigation by, among other things, dropping two very serious counts that apply in this case. Might it not be more accurate, more specific, and more importantly clearer if in that provision that I pointed out earlier, the new information provision, if it said new factual information given what you said? Well, I would say that's probably implied, Your Honor, but the provision, again, is I think better understood to be driven toward correcting any misunderstandings factually about the criminal history of a defendant. The criminal history is not something that's bargained over between the parties. It is an objective fact. If more information comes to light that a defendant has criminal history that the parties were unaware of at the time, it would be inappropriate for either side to try to manipulate that process and pretend that those criminal history categories didn't exist. And that would go both ways. If there is something on a defendant's criminal history that turns out to have been expunged, for example, the defendant would get the benefit of that recalculated guideline. So I think that's really the best way to read this. To the extent that the court is concerned that the government is hiding behind procedural barriers to prevent this defendant from litigating a meritorious claim, there is not a meritorious claim here. The Brown case, as Mr. Kamishiong mentioned, specifically reiterated that racketeering conspiracy can, in fact, be a sentencing guideline to crime of violence under Section 4B1.2 if the underlying offenses are themselves crimes of violence. The underlying offenses here are three robberies. The defendant was charged with a racketeering conspiracy that involved murder, New York State robbery, Hobbs Act robberies, obstruction, and narcotics. The three robberies are all New York State robberies. This Court has held in Moore and Pereira-Gomez that New York State robbery of any variety, both attempt and substantive, is itself a crime of violence under the elements or force clause of 4B1.2. As a result, the racketeering conspiracy charged against Mr. Santiago was itself a crime of violence. Unless the Court has further— Hobbs Act issue doesn't even matter. It doesn't matter at all, Your Honor. You don't need to reach that issue at all because Hobbs Act is just New York robbery plus interstate commerce. Thank you very much. Just briefly, Your Honors, I would say— Are you willing to re-expose your client to the two dismissed charges? I take it that's a no. That would not benefit—that's a no, Your Honor. That would not benefit anyone from us. I would say, Your Honors, that— before I answer the question, I would say that before appeals are taken, long and hard discussions— You're representing a client. I'm representing a client. We've asked you to appear in front of us. Yes. We certainly get that. However, I would—what I would like, Your Honors, to consider is that the career offender status imposed on my client does not apply. There are—if he were resentenced, maybe, possibly, the district court could—would see a— seeing a different guidelines range, a lower guidelines range may impose a—reimpose a lower sentence, even though the sentence that my client received was beneficial, given the circumstances, given the criminal history, Your Honor. I think that there is a meritorious claim here. I think that these Hobbs Act robberies, which were discussed in the—in the government's brief, the government conceded that the Hobbs Act robbery was not— the Hobbs Act robberies were not a categorical match for the elements clause of the guidelines, Section 4B1.2a. And the government also conceded that the Hobbs Act robbery was broader than the generic version of robbery. And the government rests on the fact that they believe that extortion as defined in the 2016 guidelines—let me say that again— essentially they rest on the fact that the—that the extortion part of the guidelines— The government ignores the fact that the generic definition of extortion, to obtain something of value from another with his consent, induced by the wrongful use of force, fear, or threats, does not match the guidelines extortion definition, obtaining something of value from— the concession, they just don't talk about it. Well, so the guidelines—the guidelines says extortion is obtaining something of value from another by the wrongful use of force, fear of physical injury, or threat of physical injury, which seems like it's threatening force against a person, right? Yes. And so the Hobbs Act says you could have threatened physical force against property. Is that the idea? So then it doesn't match, because if you're threatening physical force against property, you're not threatening physical force against a person, and maybe that doesn't meet the guidelines definition. That's correct. And in addition to that, force and physical injury are not defined by the Sentencing Commission, and it's not clear whether force or threat is a combination of those two things. Is there anything else? Thank you very much. We'll reserve the decision. As to both Santiago and Santana.